Brian Keith **CLEPHANE**,
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 55A01–9905–CR–145.

Court of Appeals of Indiana.

Nov. 19, 1999.

Loretta Lauer, Lauer and Lauer, Martinsville, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Attorney for Appellee.

## OPINION

GARRARD, Judge.

In an appeal of his conviction for Sexual Misconduct with a Minor, a class B felony, and three counts of Contributing to the Delinquency of a Minor, class A misdemeanors, Brian Clephane challenges the admission into evidence of the statement he made to a welfare case manager.

On October 18, 1997, Clephane, who was then thirty-two years old, provided alcohol at his house to fifteen year old J.R. and to her seventeen year old boyfriend, M.F. Clephane also permitted M.F. to drive Clephane's vehicle to obtain more alcohol. When M.F. left Clephane's house to run that errand, Clephane had sexual intercourse with J.R. J.R. was passed out from alcohol at the time.

Ten days later, the Morgan County Office of Family and Children ("OFC") received a report of child abuse regarding Clephane and J.R. On November 17, 1997, OFC case manager Myrtle Spencer left a message on Clephane's answering machine requesting an interview concerning a report of child abuse or neglect. Clephane returned her call and agreed to an interview at the OFC that same day. Upon his arrival, Clephane volunteered that he knew the interview was about an alleged party at his house. Clephane de-

nied that there had been a party, but stated that M.F. had "brought a girl over to his house. [M.F.] was drunk." Record at 394. Upon further investigation with others, Clephane's story did not "hold up." Record at 395–96. Following a jury trial, Clephane was found guilty of sexual misconduct with a minor and three counts of contributing to the delinquency of a minor.

In asserting that the trial judge should have granted his motion to suppress his statement to Spencer, Clephane makes a two-part argument. First, he contends that his incriminating statement was not voluntary because Spencer allowed him to believe that he would lose custody of his daughter if he did not talk about the rape investigation. He cites *Hastings v. State*, 560 N.E.2d 664, 667 (Ind.Ct.App.1990), *trans. denied*, for support. Second, he claims that Spencer's failure to Mirandize [1] him violated his due process right.

■ Generally, in reviewing a trial court's ruling on a motion to suppress, we will not reweigh the evidence, but will look to the evidence most favorable to the ruling and any uncontested adverse evidence. *Sears v. State*, 668 N.E.2d 662, 668 (Ind. 1996). Yet, here, our standard of review is different.

[T]he Fifth Amendment of the Constitution of the United States, as well as Art. I, § 14 of the Indiana Constitution, provides that persons shall be free from being compelled to make disclosures that might subject them to criminal prosecution or that might aid in convicting them. When reviewing cases involving involuntary disclosures, the Supreme Court of the United States has stated that "[t]he range of inquiry in this type of case must be broad," and that "judgment in each instance [must] be based upon consideration of 'the totality of the circumstances.'" A review of the constitutional involuntariness is a question of law, not of fact, and will be decided by the court rather than the trier of fact. To admit a confession into evidence in

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the State of Indiana, the State must prove beyond a reasonable doubt that the defendant knowingly and intelligently waived his right not to incriminate himself. In determining whether the State has met this burden, a court on appeal will take into consideration the entire record.

*Hastings,* 560 N.E.2d at 667 (citations omitted).

In *Hastings,* a mother's boyfriend broke her young child's legs, and later, his arm. *Id.* at 665–66. A Child in Need of Services action was filed after the leg-breaking incident. The State charged Hastings with neglect and she pled guilty. To regain custody of her child, Hastings "was ordered by the CHINS court and mandated by statute to participate in and cooperate with the welfare department's CHINS investigation and proceedings." *Id.* at 668–69. During a meeting, a caseworker elicited a statement from Hastings which was subsequently used to convict her of neglect in the arm-breaking incident.

On appeal, Hastings argued that "an individual's 'will to resist' the caseworker's inquiries is greatly affected by this statutory scheme and the resulting intense psychological pressure worked upon the parent of a child who may be deemed a child in need of services." *Id.* at 669. We stated, "[g]iven this vital interest in the preservation of an individual's parental rights, we agree that if the evidence before us reflects that Hastings' statements were made only in response to threats, however real, made by the interviewing caseworker, indicating that Hastings' parental rights could be terminated if she failed to cooperate, then the totality of the circumstances would suggest that Hastings' statements were made under compulsion." *Id.* In reversing her conviction, we "conclude[d] that Hastings' capacity for self-determination was 'critically impaired,' and the State failed to prove beyond a reasonable doubt that Hastings' statement constituted a voluntary confession." *Id.*

■ In reviewing Clephane's claims that his statement to Spencer should not have been allowed into evidence because it constituted an involuntary confession, we must address two questions: 1) was Spencer acting as an agent of the government in the course of securing a conviction; and 2) was Clephane's statement given involuntarily? *See id* at 668. The trial court determined that Spencer was acting as an agent of the government. The State does not contest this determination. As for the second prong, the trial judge found that Clephane's statement was voluntary. We agree, but elaborate and distinguish the present case from *Hastings.*

The OFC had not ordered Clephane to cooperate with Spencer lest he risk the termination of his parental rights. Moreover, Clephane's cooperation was not mandated by statute or by a court. Rather, Clephane voluntarily returned Spencer's call regarding an investigation of child abuse or neglect and agreed to an interview. Once at the interview, Clephane "volunteered" that he "knew" that the report was about the incident with M.F. and the girl. Record at 394. He denied having had a party or having made advances toward J.R. *Id.* Spencer did not force Clephane to stay. To the contrary, Clephane testified that he knew that he was "free to leave" when he arrived at the OFC for the interview. Record at 378. Further, it appears from the record that at one point Clephane "got mad and left," yet then answered Spencer's questions. Record at 379–80. Reviewing the totality of the circumstances, we find unavailing Clephane's contention that his statement was involuntary.

■ As for Clephane's *Miranda* argument, we note that *Miranda* warnings are based upon the Fifth Amendment Self–Incrimination Clause, and were designed to protect an individual from being compelled to testify against himself. *Curry v. State,* 643 N.E.2d 963, 976 (Ind.Ct.App. 1994), *trans. denied.* However, the procedural safeguards of *Miranda* apply only when an individual is subjected to custodial interrogation. *Id.* Therefore, police officers are not required to give a defendant

*Miranda* warnings unless the defendant is both in custody and subject to interrogation.

■ Interrogation includes both express questioning and words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id.* at 977. However, interrogation must involve a measure of compulsion beyond that inherent in custody itself. *Id.* In order to be in custody for purposes of *Miranda,* one need not be placed under formal arrest. *Thompson v. State,* 692 N.E.2d 474, 476 (Ind.Ct.App.1998). Rather, the determination is based upon whether the individual's freedom has been deprived in a significant way or if a reasonable person in the accused's circumstances would believe that he is not free to leave. *Id; Cliver v. State,* 666 N.E.2d 59, 66 (Ind.1996). The determination involves an examination of all the objective circumstances surrounding the interrogation. *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind.1995).

■ While Clephane had not been arrested by police when he made his statement, he was speaking with Spencer, who was functioning as an agent of the government. However, as pointed out *supra,* Clephane testified that he knew that he was "free to leave" when he arrived at the OFC for the interview. Record at 378. Indeed, in view of the circumstances, a reasonable person would not have believed he was prohibited from leaving. Thus, Clephane was not in custody and need not have been given *Miranda* warnings prior to his statement to Spencer. The trial judge did not err in denying Clephane's motion to suppress his statement and in admitting the statement at trial.

Affirmed.

DARDEN, J. and FRIEDLANDER, J. concur.