746 N.E.2d 81 (2001)
Robert A. SIMMONS, Appellant-Defendant,
v.
STATE of Indiana, Appellee.
No. 35A05-0004-CR-156.
Court of Appeals of Indiana.
March 15, 2001.
Rehearing Denied May 7, 2001.
*84 Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.
Karen Freeman-Wilson, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee. *82

*83 OPINION
SULLIVAN, Judge.
Appellant, Robert A. Simmons, challenges his conviction for Child Molesting, a Class A felony.[1]
*85 Upon appeal, Simmons presents the following arguments:
(1) Whether there was sufficient evidence to support the conviction;
(2) Whether the trial court erred by admitting the victim's hearsay statement; and
(3) Whether the trial court relied upon improper aggravating circumstances in determining Simmons' sentence.
We affirm the conviction but remand for modification of the sentence in accordance with this opinion.
The facts most favorable to the jury verdict reveal that in the spring of 1998, three-year-old C.R. lived with her biological mother, Tina, and Tina's boyfriend, twenty-seven-year-old Simmons. Although C.R. lived with her mother, she had visitation with her biological father Dennis and his wife Jamie. During one of the visits, Jamie took C.R. to the zoo for a birthday party. While they walked through the zoo, C.R. "kept putting her hand between her legs [and] holding herself." Record at 230. Although Jamie assumed at first that C.R. had to use the bathroom, C.R. continued to "hold herself" even after Jamie had taken her to use the bathroom several times. Record at 230. Out of frustration, Jamie asked C.R. why she was still holding herself. According to Jamie, C.R. responded, "because Rob's hurting me." Record at 231.
Based upon C.R.'s response, Jamie and Dennis took C.R. to the hospital emergency room for a physical examination. Although the attending physician did not find any physical evidence of sexual abuse, Jamie and Dennis decided to get a second opinion from pediatrician Dr. Duane Hougendobler. As C.R.'s appointment was not for another week, C.R. was returned to Tina. On May 26, 1998, Dr. Hougendobler examined C.R. and found evidence of vaginal penetration. In particular, Dr. Hougendobler found that C.R.'s vagina was dilated two and one-half centimeters and there was no longer a hymen. Child protective services removed C.R. from Tina's care and placed her with Tina's parents. C.R. was returned to Tina's care for a few months and ultimately placed permanently with Jamie and Dennis in February of 1999. Because Jamie and Dennis observed that C.R. was experiencing emotional distress, they enrolled her in counseling with Dr. Martin Joseph Greengrass, a clinical psychologist. During the counseling sessions, C.R. consistently identified Simmons as the person who improperly touched her.
Detective Ron Hochstetler of the Huntington Police Department investigated C.R.'s allegations. Although Simmons initially denied C.R.'s allegations, during a subsequent interview on June 1, 1999, Simmons told Detective Hochstetler that "he knew why he was here" and "what it was all about." Record at 333. According to Detective Hochstetler, Simmons began to cry when the interview started and was unable to continue talking for a while. Simmons stated that he "knew he had a problem ... with his behavior toward [C.R.] and that he needed help with it." Record at 339-40. Simmons also admitted that he had sexual contact with C.R., although he never specified the nature of the contact. Thereafter, Simmons was charged with Child Molesting as a Class A felony.
During a jury trial, C.R., apparently overwhelmed by the trial setting, had difficulty describing the incident in detail. However, she was able to express that someone named Rob had done something to her vaginal area with his finger. C.R.'s stepmother, Jamie, testified regarding the incident at the zoo and related to the jury that C.R. told her that she was holding herself because Simmons was hurting her. *86 Defense counsel objected, claiming that the child's statement was hearsay and moved to strike her answer. The prosecutor responded that C.R.'s answer was a statement of her then existing physical condition, an exception to the hearsay rule. The trial court overruled the objection and allowed the testimony. Although Simmons testified, denying that he had previously admitted having sexual contact with C.R., he was found guilty as charged. During the sentencing hearing the trial court found five aggravating circumstances and sentenced Simmons to the maximum term of fifty years incarceration.

I.

Sufficiency of the Evidence
Simmons challenges the sufficiency of the evidence supporting his conviction. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Davies v. State (2000) Ind.App., 730 N.E.2d 726, 739, trans. denied, petition for cert. filed. We consider only the evidence favorable to the verdict, as well as any reasonable inferences, to determine if the conviction is supported by sufficient evidence of probative value. Id.
To prove the offense as charged, the State was required to show that Simmons, who was at least twenty-one years of age, performed deviate sexual conduct with a child under fourteen years of age. See I.C. XX-XX-X-X(a)(1). Deviate sexual conduct is an act involving the "penetration of the sex organ or anus of a person by an object." I.C. XX-XX-X-X (Burns Code Ed. Repl. 1998).[2] A finger may be considered an object under the statute. Stewart v. State (1990) Ind., 555 N.E.2d 121, 126, overruled on other grounds by Lannan v. State (1992) Ind., 600 N.E.2d 1334. According to Simmons, although the evidence most favorable to the verdict establishes that there was an improper touching,[3] it does not prove that he penetrated C.R.'s sex organ or anus. In particular, Simmons points out that while C.R. named him as the perpetrator, and indicated that he used his finger to accomplish the "bad touches," she was unable to describe the touching. Simmons further points out that Detective Hochstetler's testimony, that Simmons admitted having sexual contact with C.R., does not necessarily establish that he penetrated C.R.'s sex organ or anus. Finally, Simmons contends that although Dr. Hougendobler testified that C.R.'s vagina had been penetrated, the evidence shows that Simmons did not have access to C.R. between the time of the emergency room examination, which revealed no evidence of penetration, and Dr. Hougendobler's examination. Simmons also points out that because C.R. made subsequent complaints, which Dr. Hougendobler believed were unfounded, her initial complaints also must have been unfounded.
As Simmons indicates, Dr. Hougendobler's testimony was the only evidence *87 of penetration presented by the State.[4] However, "[t]he fact-finder may infer penetration from circumstantial evidence such as the physical condition of the victim soon after the incident." Pasco v. State (1990) Ind., 563 N.E.2d 587, 590. See also Page v. State (1980) 274 Ind. 264, 267, 410 N.E.2d 1304, 1307; Rowan v. State (1982) Ind., 431 N.E.2d 805, 813; Short v. State (1991) Ind.App., 564 N.E.2d 553, 559. The record reveals that Dr. Hougendobler examined C.R. on May 26, 1998, approximately one and one-half weeks after C.R. first told her stepmother that Simmons was hurting her. Following his examination, Dr. Hougendobler found that C.R.'s vagina was dilated two and one-half centimeters, even though a child C.R.'s age should not exhibit any dilation. Dr. Hougendobler also found that C.R.'s hymen was "totally gone" and that you could "see the rim where it had been." Record at 379, 380. Based upon his experience and education, Dr. Hougendobler concluded that C.R.'s vagina had been penetrated in some manner in the spring of 1998. When C.R.'s testimony that Simmons improperly touched her in her vaginal area with his finger is viewed in conjunction with Dr. Hougendobler's testimony, a jury could have reasonably concluded that Simmons, who was living with C.R. in the spring of 1998, penetrated C.R.'s vagina with his finger. Although it appears that C.R. later made unfounded complaints about pain in her vaginal area, the jury was permitted to believe that her initial complaints were legitimate.
Finally, we disagree with Simmons' contention that because he did not have contact with C.R. in the one and one-half weeks between the emergency room examination, which did not reveal any physical evidence of penetration, and Dr. Hougendobler's examination, he could not have been responsible. Initially, we note that the portion of Jamie's testimony to which Simmons points does not support his contention. Jamie's testimony reveals that because C.R. had to wait a week before she could see Dr. Hougendobler, C.R. was returned to Tina, who then had physical custody of C.R. There is nothing in Jamie's testimony or Simmons' own testimony that shows that Simmons was no longer living with Tina at that time. Therefore, we fail to see how Jamie's testimony supports Simmons' contention that he could not have committed the offense because he did not have contact with C.R. between the first and second medical examinations.
Be that as it may, a jury could have reasonably determined that the physical evidence detected by Dr. Hougendobler was merely overlooked by the emergency room physician. Dr. Hougendobler testified that during an emergency room examination, the physician is looking for "major trauma" such as "bruising" and "bleeding" and that when the manifestations of vaginal penetration are not obvious, as they were in this case, it would not be unusual for an emergency room physician to fail to detect them. Record at 380. In addition, there was no evidence that the physical signs Dr. Hougendobler discovered would have resolved themselves in the time between *88 the first and second examinations. Therefore, the evidence is sufficient to support the conviction.

II.

Admissibility of C.R.'s Statement
Simmons contends that the trial court erroneously allowed C.R.'s stepmother, Jamie, to testify to a statement C.R. made to her during a visit to the zoo. A trial court is afforded broad discretion in ruling on the admissibility of evidence. Jennings v. State (2000) Ind.App., 723 N.E.2d 970, 972. We will reverse the trial court's determination only if the court abused its discretion. Id.
During trial, Jamie testified that even after she had taken C.R. to the restroom several times, C.R. continued to hold herself. When the prosecutor asked Jamie whether C.R. had indicated why "she was putting her hand between her legs," Jamie responded that C.R. eventually told her, "because Rob's hurting me, mom." Record at 230-31. Following an objection by defense counsel, the State contended, and the trial court agreed, that the statement was admissible under Ind.Evidence Rule 803(3) as a statement of the declarant's then existing physical condition.
Initially, we note that C.R.'s out-of-court statement is hearsay as it was offered to prove the truth of the matter asserted, that Simmons hurt C.R. in her vaginal area. See Ind.Evidence Rule 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Thus, in order for it to be admissible it must fall within a hearsay exception. Jennings, supra, 723 N.E.2d at 973. Indiana Evidence Rule 803(3) provides as follows:
Rule 803. Hearsay Exceptions: Availability of Declarant Immaterial.
The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
* * *
(3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it related to the execution, revocation, identification, or terms of declarant's will.
Simmons contends that while Evid.R. 803(3) permits evidence of a declarant's then existing physical condition, it does not allow a declarant to offer a statement "concerning past events remembered or believed by the declarant." Appellant's Brief at 7. Thus, Simmons asserts that while C.R. was permitted to refer to any physical pain she was experiencing in her vaginal area, she should not have been allowed to state that Simmons caused her pain. We must agree.
The purpose of this hearsay exception is to allow comments concerning a declarant's then existing pain or symptoms which ordinarily would be difficult or impossible to prove. See ROBERT LOWELL MILLER, JR., 13 INDIANA PRACTICE § 803.103B at 622 (2d ed. 1995). Thus, any statements describing the locality of the pain or the symptoms of an illness are admissible. See Fleener v. State (1995) Ind.App., 648 N.E.2d 652, 655 (concluding that child's complaint that her "bottom was sore" was admissible as an existing physical condition), vacated on other grounds by Fleener v. State (1995) Ind., 656 N.E.2d 1140. Conversely, any statements describing how a victim was injured are not admissible *89 as they recount a past event remembered. See MILLER, supra, § 803.103B at 621 ("Rule 803(3) should bring no change to prior Indiana law, which allowed statements of existing pain, whether to physicians or to others, but forbade narratives of the manner in which the injuries were received or the pain inflicted....") (footnotes omitted). In this case, while C.R. did not provide a narrative of the alleged incident, she did more than describe the locality of her pain. In effect, C.R. testified that sometime in the past, Simmons had done something to her which caused her to experience pain in her vaginal area. Thus, to the extent C.R.'s statement referred to Simmons as the cause of her pain, it was inadmissible.
Although not argued at trial, the State also contends that C.R.'s statement was admissible under Evid.R. 803(3) as a statement of C.R.'s then existing state of mind, specifically, her intent to act in a particular way. Our Supreme Court has recognized that a statement of a declarant's then existing state of mind is admissible as an exception to the hearsay rule. See Ford v. State (1998) Ind., 704 N.E.2d 457, 459-60. However, when the statement is not a direct assertion of the declarant's then existing state of mind but circumstantial evidence of it, it is being offered not to prove the truth of the matter asserted, but for some other purpose; thus, the statement by definition is not hearsay. See Angleton v. State (1997) Ind., 686 N.E.2d 803, 809; MILLER, supra, § 803.103A at 613-14 (noting that when a declarant's statement is offered as circumstantial evidence of the victim's state of mind, it is offered for a purpose other than to prove the truth of the matter asserted, and therefore, is not hearsay). Accordingly, in such circumstance, the evidence need not be shown to be within an exception to the hearsay rule. As C.R.'s statement was not a direct assertion of her state of mind but circumstantial evidence of it, the State is in essence asking this court to find that the statement was properly admitted as non-hearsay and not as an exception to the hearsay rule. However, we have already concluded that the statement was indeed offered to prove the truth of the matter asserted. Thus, it is inadmissible. See Taylor v. State (1995) Ind., 659 N.E.2d 535, 543 (concluding that victim's statement to police officer that defendant had threatened to kill her was offered for the truth of the matter asserted, to show that the defendant had threatened or intended to kill her, and therefore was inadmissible hearsay).
Nevertheless, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." Ind.Evidence Rule 103(a). In making this determination, we assess "the probable impact of the improperly admitted evidence upon the jury." Sparkman v. State (2000) Ind. App., 722 N.E.2d 1259, 1263. At trial, the jury was presented with overwhelming evidence that Simmons was the person who had improper sexual contact with C.R. In addition to hearing testimony from C.R. herself and Dr. Greengrass, the jury also heard Simmons' confession. Finally, the jury had before it medical evidence that C.R.'s vagina had been penetrated. Given this evidence, the probable impact of the inadmissible hearsay upon the jury was not significant. Thus, there is no reversible error.

III.

Sentencing
Simmons claims that the trial court erred in sentencing him to the maximum fifty years incarceration. A trial court is afforded broad discretion in determining *90 a defendant's sentence. Carlson v. State (1999) Ind.App., 716 N.E.2d 469, 471. We will reverse the trial court's determination only for an abuse of discretion. Id.
If a trial court relies upon aggravating or mitigating circumstances, the trial court must "(a) identify all significant mitigating and aggravating circumstances found, (b) specify the facts and reasons which lead the court to find the existence of each such circumstance, and (c) demonstrate that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence." Crawley v. State (1997) Ind., 677 N.E.2d 520, 521-22. The purpose of the sentencing statement is to provide an appellate court a basis for meaningful review and to guard against arbitrary sentences. Smith v. State (1995) Ind.App., 655 N.E.2d 532, 540 n. 13, trans. denied.
In its sentencing order, the trial court made the following findings:
"The Court finds the following aggravating factors: 1) The defendant has a history of criminal activity; 2) the defendant is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; 3) imposition of a reduced sentence or suspension of the sentence would depreciate the seriousness of the crime committed; 4) an adult risk assessment instrument showing a total of twenty-four; 5) the circumstances surrounding the family and the stress that the family has undergone, and also the tremendous impact that this action has had upon a minor child." Record at 137.
Simmons contends that of the five aggravating circumstances relied upon by the court, only his criminal history was a valid aggravator. Simmons further contends that because his criminal history was relatively minor, it does not support the imposition of a maximum sentence. We address each factor separately.

A.

Imposition of a Reduced Sentence
In its sentencing order, the trial court identified the statutory aggravating circumstance that "[i]mposition of a reduced sentence or suspension of the sentence... would depreciate the seriousness of the crime." See I.C. XX-XX-X-X.1(b)(4) (Burns Code Ed. Supp. 2000). Simmons contends that the trial court's reliance upon this factor was improper because the court was not considering imposing a sentence less than the presumptive sentence. We agree.
Our Supreme Court has made clear that this statutory aggravator may be used only when the trial court is considering imposing a sentence less than the presumptive. See Penick v. State (1995) Ind., 659 N.E.2d 484, 488 ("[T]his statutory factor focuses on imposition of a reduced sentence and it may be used only when considering the imposition of a sentence which is shorter than the presumptive sentence."); Price v. State (2000) Ind., 725 N.E.2d 82, 85. In this case, there is no evidence that the trial court was considering imposing less than the presumptive sentence. Both the probation officer and the prosecutor recommended that the maximum penalty be imposed. Moreover, while a trial court may properly consider as an aggravator the non-statutory factor that imposition of "less than the enhanced term" would depreciate the seriousness of the crime, the trial court did not indicate that it was doing so in this case. See Wray v. State (1987) Ind.App., 514 N.E.2d 96, 97 (quoting Evans v. State (1986) Ind., 497 N.E.2d 919, 923-24 (emphasis in original)). Thus, reliance upon this factor was *91 improper. See Spiller v. State (2001) Ind. App., 740 N.E.2d 1270, 1274.

B.

Need of Correctional or Rehabilitative Treatment
The trial court also relied upon the statutory aggravator that "[t]he person is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility." I.C. XX-XX-X-X.1(b)(3). Simmons contends and we agree that "for this aggravating circumstance to justify in part an enhanced sentence, it must be understood to mean that the defendant is in need of correctional and rehabilitative treatment that can best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence term." Mayberry v. State (1996) Ind., 670 N.E.2d 1262, 1271. Here, the trial court made no effort to explain why correctional treatment in excess of the presumptive term would be appropriate for this particular defendant. Moreover, the presentence report, which contained Simmons' criminal history, does not support such a conclusion. Although Simmons has three prior convictions, he has never received more than the presumptive sentence and has always had at least a part of each sentence suspended. "Every executed sentence entails incarceration. The question is whether extended incarceration is appropriate." Wooley v. State (1999) Ind., 716 N.E.2d 919, 930. As Simmons has never served an entire presumptive sentence, we fail to see why incarceration in a penal facility in excess of the presumptive sentence would be appropriate. Thus, reliance upon this aggravator was improper.

C.

Impact upon the Victim and Family
The trial court also found as an aggravating factor "the circumstances surrounding the family and the stress that the family has undergone, and also the tremendous impact that this action has had upon a minor child." Record at 465. Without denying that the offense of child molesting causes extreme stress and anxiety for a family and a victim, Simmons contends that "nothing in the trial court's sentencing statement suggests the impact on the child [and family] here was so distinct that it rose to the level of an aggravating factor." Appellant's Brief at 20. Again, we must agree.
Generally, the impact that a victim or a family experiences as a result of a particular offense is accounted for in the presumptive sentence. Mitchem v. State (1997) Ind., 685 N.E.2d 671, 678. "In order to validly use victim impact evidence to enhance a presumptive sentence, the trial court must explain why the impact in the case at hand exceeds that which is normally associated with the crime." Davenport v. State (1997) Ind., 689 N.E.2d 1226, 1233, clarified on reh'g on other grounds.
In its sentencing order the trial court stated that Simmons' actions had adversely affected C.R. and her family and that the child would need counseling "for many, many years." Record at 465. That finding was supported by Jamie's testimony that as a result of the molestation, C.R. visits a counselor on "a regular basis" and has "bad dreams that [Simmons] is going to come and get her again." Record at 461-62. While we certainly acknowledge the significant impact the offense obviously has had on C.R., we cannot say that it is distinct from the impact felt by similarly situated victims. Thus, the trial court's reliance upon this factor was erroneous.

D.

Adult Risk Assessment
In enhancing Simmons' sentence, the trial court also relied upon the probation *92 officer's "Adult Risk Assessment Instrument" which was completed along with the presentence report. Record at 135. The risk assessment instrument rated the following factors which were then assigned a certain value depending upon the answer: (1) age at first conviction or adjudication; (2) number of prior convictions; (3) number of prior supervisions; (4) number of prior violations of community supervisions; (5) prior commitments; (6) history of substance abuse; (7) time employed full-time during the last twelve months; (8) residence change within the last twelve months; (9) educational attainment; and (10) expectation of compliance. Based upon the total value, the probation officer concluded that Simmons would require a high level of supervision. Simmons contends that the adult risk assessment, although a relevant guide for determining the appropriateness of probation, was not a proper consideration for determining whether to impose an enhanced executed sentence. Again, we must agree.
The risk assessment instrument as a whole appears to measure a defendant's ability to succeed on probation or within a community corrections program. We agree with Simmons that it was not an appropriate consideration for enhancing the presumptive sentence to be served in a correctional facility. At the same time, the instrument could also be used to measure the risk that the defendant will commit another crime or to assess the defendant's character, factors the trial court is required to consider in sentencing and which may be used to enhance a presumptive sentence. See Shields v. State (1998) Ind., 699 N.E.2d 636, 639. Yet, there is no evidence from the trial court's sentencing statement that the court relied upon the risk assessment instrument for those purposes.[5]
Furthermore, to the extent Simmons' criminal history was used to measure his risk of committing another crime or in determining his character, that circumstance had already been considered as a statutory aggravating factor and assigned its own weight. See I.C. XX-XX-X-X.1(b)(2) (listing a person's history of criminal or delinquent activity as a statutory aggravating factor). Thus, without explaining why the risk assessment report supported an aggravated sentence, consideration of this factor was inappropriate.

E.

Criminal History
Finally, Simmons contends that his criminal history, although an appropriate aggravating factor, does not support the imposition of a fifty-year maximum sentence. Under former Ind.Appellate Rule 17(B), and new appellate rule 7(B), this court is permitted to revise a sentence which is manifestly unreasonable "in light of the nature of the offense and the character of the offender." A sentence is subject to revision if it is clearly, plainly, and obviously unreasonable. *93 Echols v. State (2000) Ind., 722 N.E.2d 805, 809.
The presumptive sentence for a Class A felony is thirty (30) years "with not more than twenty (20) years added for aggravating circumstances...." I.C. XX-XX-X-X (Burns Code Ed. Repl. 1998). As noted above, a person's "history of criminal or delinquent activity" may be considered by the trial court as an aggravating factor in determining an appropriate sentence. See I.C. XX-XX-X-X.1(b)(2). "This language does not limit the court's consideration to prior felony convictions but allows courts to consider misdemeanors and other prior criminal activity which has not been reduced to a conviction but which does indicate a prior criminal history." Hoelscher v. State (1984) Ind., 465 N.E.2d 715, 717.
The presentence report indicates that Simmons had no juvenile criminal history. As an adult, Simmons pleaded guilty to Theft, a Class D felony[6] in 1990, Operating without Proof of Financial Responsibility[7] in 1993, then a Class C misdemeanor,[8] and Conversion, a Class A misdemeanor,[9] in 1999. Record at 130. Simmons also received a suspended sentence and informal probation for failing to provide proof of insurance following his 1993 conviction. We acknowledge that it has often been stated that a single aggravating factor, such as a defendant's criminal history, may be sufficient to support an enhanced sentence, even if some factors were improperly considered. See Price, supra, 725 N.E.2d at 85. However, a relatively minor criminal history comprised of offenses unrelated to the present offense cannot be considered significant. Wooley, supra, 716 N.E.2d at 929, n. 4.
"Significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense. Therefore, a criminal history comprised of a prior conviction for operating a vehicle while intoxicated may rise to the level of a significant aggravator at a sentencing hearing for a subsequent alcohol-related offense. However, this criminal history does not command the same significance at a sentencing hearing for murder." Id.

Moreover, a maximum sentence permitted by law should be reserved for the very worst offenders. Buchanan v. State (1998) Ind., 699 N.E.2d 655, 657. As Simmons' criminal history was not lengthy, did not demonstrate a tendency toward violence or a propensity to commit sexual acts, and was the only proper aggravating factor considered by the trial court, we find that the maximum sentence in this case is manifestly unreasonable. As a result, we remand this case to the trial court to impose a forty-year sentence.
The conviction for child molesting as a Class A felony is upheld and the cause is remanded to the trial court with instructions to modify the sentence to a term of forty years incarceration.
MATHIAS, J., concurs.
SHARPNACK, C.J., concurs in part and dissents in part with separate opinion.
SHARPNACK, C.J., concurring in part and dissenting in part.
I concur fully on issues I and II. I generally concur with respect to the majority's *94 evaluation of the aggravators considered by the trial court in the discussion of issue III, however I cannot concur in the conclusion that the sentence of fifty years is manifestly unreasonable. Rather than revise the sentence, as did the majority, I would remand to the trial court for resentencing.
Ind. Appellate Rule 17(B)(7(B) under the rules applicable to appeals initiated in 2001) governs our consideration of the matter. Under that rule, we may not "revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender ." App. R. 17(B). We have here a twenty-seven year old man who took advantage of his access to a three-year old girl, as the live-in companion of the child's mother, to gratify his sexual appetites by pushing his finger into the girl's vagina. The disparity in age, disparity in size and power, and violation of the confidence of the child and her mother in his being a safe person for the child to be with, are enough to convince me that the sentence is not "clearly, plainly, and obviously unreasonable." Echols v. State 722 N.E.2d 805, 809 (Ind. 2000). The age of the victim places her among the youngest of children to be vulnerable to such an assault. A victim of that age is far less able to perhaps resist and protect herself than an older child might be. The measure of the character of the defendant, as revealed by the nature of his offense and his criminal record, is not enhanced by anything in the record. I might have imposed a different sentence, had I had the responsibility vested in the trial court. I might even consider the sentence unreasonable, but I cannot say that the sentence is manifestly unreasonable. See Singer v. State, 674 N.E.2d 11, 13 (Ind.Ct.App.1996) (noting that "reasonable people will differ as to the appropriate sentence in any given case"). Consequently, I respectfully dissent from the majority's revision of Simmons' sentence.
NOTES
[1] I.C. XX-XX-X-X(a)(1) (Burns Code Ed. Repl. 1998).
[2] Although deviate sexual conduct includes either an act involving "[a] sex organ of one person and the mouth or anus of another person" or an act involving the "penetration of the sex organ or anus of a person by an object," the jury was instructed on the latter definition. See I.C. XX-XX-X-X; Record at 107.
[3] In fact, there was overwhelming evidence that an improper touching had occurred. During her testimony, C.R. indicated several times that Simmons was the person who had inappropriate sexual contact with her. Record at 264, 266, 277, 280. The jury was also informed by Dr. Greengrass that during counseling sessions, C.R. consistently named Simmons as the perpetrator. Finally, Detective Hochstetler revealed Simmons' admission to having improper sexual contact with C.R.
[4] We acknowledge that we have previously indicated that "[t]he unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify against a perpetrator in a prosecution for child molestation when facts are explained in a simple or childlike language which judge and jury can understand." Short v. State (1991) Ind.App., 564 N.E.2d 553, 558-59. See also Spurlock v. State (1996) Ind., 675 N.E.2d 312, 315 ("[A] detailed anatomical description of penetration is unnecessary...."). In this case, however, C.R. was unable even to attempt to describe the improper touching. Therefore, her testimony alone is not sufficient to support a finding of penetration.
[5] Our Supreme Court has made clear that the risk a defendant will commit additional crimes may be considered as an aggravating factor under I.C. XX-XX-X-X.1(d) even though it is not listed as a statutory aggravating factor under subsection (b). See Shields, supra, 699 N.E.2d at 639. Compare I.C. XX-XX-X-X.1(a) (listing several factors, including the risk a defendant will commit another crime, a trial court must consider "[i]n determining what sentence to impose ....") with I.C. XX-XX-X-X.1(b) (setting forth the statutory aggravating factors). Because the risk a defendant will commit another crime may not necessarily be an aggravating factor, but a circumstance that the trial court considers in determining what sentence to impose, the trial court should make clear by its sentencing statement whether it is considering this factor as an aggravator.
[6] I.C. XX-XX-X-X (Burns Code Ed. Repl. 1998).
[7] I.C. 9-25-8-2 (Burns Code Ed. Repl. 1997 & Supp. 2000).
[8] See P.L.2-1991, § 13. Pursuant to P.L.100-1997, § 1, effective July 1, 1997, the penalty was changed to a Class A infraction.
[9] I.C. XX-XX-X-X (Burns Code Ed. Repl. 1998).