## MEMORANDUM DECISION

**Pursuant to Ind.** Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2017, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Maxfield, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 15, 2017 <br><br> Court of Appeals Cause No. 16A01-1608-CR-1970 <br><br> Appeal from the Decatur Circuit Court <br><br> The Honorable Timothy Day, Judge <br><br> Trial Court Cause No. 16C01-1512-FA-772 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Thomas Maxfield (Maxfield), appeals his sentence for two Counts of child molesting, Class A felonies, Ind. Code § 35-42-4-3(a)(1).

We affirm.

# ISSUE

Maxfield raises one issue on appeal, which we restate as: Whether Maxfield's sentence is inappropriate in light of the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

B.C.C., born on March 10, 1992, and M.J.B., born on October 12, 1992, were childhood friends living in Franklin County, Indiana. B.C.C.'s mother was married to Maxfield between 1995 and 1998. During that time, B.C.C. became closely bonded with Maxfield and he viewed him as a father figure. In 2001, after his divorce from B.C.C.'s mother, Maxfield moved to a trailer in Greensburg, Indiana. Even after the divorce, B.C.C. remained close to Maxfield and he would visit Maxfield. M.J.B. would accompany B.C.C. during the visits. On one evening, when the boys were around nine years old, Maxfield instructed them to touch each other's penises as Maxfield masturbated himself.

Maxfield thereafter moved to another trailer in Decatur County, Indiana, and B.C.C. and M.J.B. continued to visit him. M.J.B. specified that he would sleep on the couch, and B.C.C. would sleep with Maxfield in the bed. M.J.B.

thought this was odd considering B.C.C. had his own bed in the trailer.  While living in Decatur County, Maxfield again instructed M.J.B. and B.C.C. to touch each other's penises while he masturbated.  On another occasion, Maxfield directed B.C.C. and M.J.B. to perform anal sex with each other while he masturbated in the bed.  M.J.B. stated that Maxfield's proposal to have them engage in anal sex "didn't work because they were too young and didn't really understand." (Appellant's App. Vol. II, p. 9).  At times during his sexual encounters with B.C.C. and M.J.B., Maxfield had difficulties in getting an erection and would become frustrated.  B.C.C. and M.J.B. thought this was funny and they would laugh and snicker at Maxfield.  Other sexual encounters consisted of M.J.B. performing oral sex on Maxfield several times, Maxfield touching M.J.B. and B.C.C. sexually over ten times, and M.J.B. watching Maxfield perform oral sex on B.C.C.  The record shows that M.J.B. and B.C.C. were between nine and twelve years old when Maxfield resided in Decatur County.

[6]     When M.J.B. and B.C.C. were about twelve years old, Maxfield relocated to Ripley County, Indiana.  Maxfield was renting a space upstairs in his nephew's home.  M.J.B. and B.C.C. continued visiting Maxfield.  While living in Ripley County, on several occasions, Maxfield touched the boys' penises, and he masturbated while observing M.J.B. and B.C.C touch each other's penises.  According to M.J.B., most of the sexual encounters happened in the evening with the lights on since Maxfield enjoyed watching.  When M.J.B. and B.C.C. were about thirteen years old, Maxfield moved back to Franklin County,

Indiana. Maxfield continued to sexually abuse M.J.B. and B.C.C. On several occasions, Maxfield touched M.J.B.'s and B.C.C.'s penises; Maxfield performed oral sex on M.J.B. and B.C.C.; M.J.B. performed oral sex on Maxfield; and Maxfield ejaculated in M.J.B.'s mouth which "upset him and made him sick." (Appellant's App. Vol. II, p. 11). Maxfield's had about thirty to forty sexual encounters with B.C.C. and M.J.B. in Franklin County.

[7] M.J.B. lost contact with B.C.C. when he turned sixteen years old. Over the July 4th weekend in 2015, M.J.B. found the courage to disclose Maxfield's sexual abuse to his family. On August 19, 2015, Officer Kip Main (Officer Main) of the Batesville Police Department interviewed M.J.B., who is now an adult and serving in the U.S. Army. During the interview, M.J.B. reiterated Maxfield's sexual abuse on him and on B.C.C. On November 20, 2015, Officer Main located B.C.C. in Ohio, and B.C.C. confirmed M.J.B.'s sexual abuse allegations. On November 23, 2015, Officer Main located Maxfield, who was now sixty years old, at his place of employment. Maxfield ultimately confessed to sexually abusing M.J.B and B.C.C. Maxfield claimed that when B.C.C. was about ten years old, he caught him and M.J.B. touching each other sexually. Maxfield admitted that he watched B.C.C. and M.J.B. masturbate; B.C.C. and M.J.B. watched him masturbate; B.C.C. and M.J.B. masturbated him; he masturbated B.C.C., but he could not recall if he masturbated M.J.B.; he performed oral sex on B.C.C. and M.J.B.; he received oral sex from B.C.C. and M.J.B.; and he watched B.C.C. and M.J.B. perform oral sex on each other. Maxfield admitted to about ninety sexual encounters with the boys.

[8]     On December 4, 2015, the State filed an Information, charging Maxfield with two Counts of child molesting, Class A felonies, on B.C.C. and M.J.B. On June 28, 2016, Maxfield pled guilty as charged in exchange for concurrent sentences. Sentencing was left open to the trial court. On July 28, 2016, the trial court accepted Maxfield's guilty plea, and thereafter conducted a sentencing hearing. After hearing the evidence, the trial court sentenced Maxfield to concurrent sentences of thirty years on each Count, to be executed in the Indiana Department of Correction.

[9]     Maxfield now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[10]     Maxfield argues that his sentence is inappropriate in light of his offenses and character. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on Maxfield to persuade the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of Maxfield, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Id*.

[11] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). A person who commits a Class A felony faces a sentence of twenty to fifty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4. The plea agreement provided that sentencing would be left open, however, sentences to both Counts would run concurrently. In this case, the trial court sentenced Maxfield to the advisory thirty years on each Count with both sentences to run concurrently.

[12] Our review of the nature of the offenses reveals that Maxfield used his position of trust to sexually molest B.C.C. and M.J.B. from age nine to about age sixteen. During his interview, Maxfield confessed to Officer Main that he had about ninety sexual encounters with B.C.C. and M.J.B. from 2001 to 2005. At the sentencing hearing, Officer Main testified that when he interviewed B.C.C. and M.J.B., they both explained to him "how this has affected their entire life, the decisions that they have made, relationships that they have, [] or had difficulty with, and that it has basically plagued them their entire life." (Tr. Vol. II, p. 25). B.C.C. reported in his victim impact statement that his biological father left when he was two years old. The deep psychological effect of Maxfield's sexual exploitation was exhibited in B.C.C.'s letter where he indicated that Maxfield saved his life, gave him a family that he never had, and taught him everything he needed to learn from a father. Despite the molestation, B.C.C. noted that Maxfield "changed [his] life for the better" and that "[he] never told [Maxfield] no or tried to stop him because as a child

growing up in a broken home he made me feel like I was loved." (Appellant's App. Vol. II, pp. 57-58). M.J.B. was not as forbearing as B.C.C. in his victim impact statement and he stated that "Maxfield has greatly impacted my life by ruining my childhood, and affecting my marriage from issues stemming from abuse as a child." (Appellant's App. Vol. II, p. 54). In the instant case, one victim was his step-son, and the other was his step-son's friend. As noted, B.C.C. grew an attachment to Maxfield and viewed him as the father figure. It is apparent from the record that B.C.C.'s mother and M.J.B.'s parents trusted Maxfield enough to allow the boys to visit Maxfield; however, during their many visits, Maxfield sexually molested the boys for his own sexual gratification.

[13] Turning to character, we examine "the offender's life and conduct." *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. While Maxfield does not have any prior convictions, the record shows that he did not live a law-abiding life. Maxfield admitted to Officer Main that he had molested two other boys in Ohio when he was a Boy Scouts leader. Again, there, he was in a position of trust as a Boy Scouts leader and he took advantage of that position for his own sexual satisfaction. *See Simmons v. State*, 746 N.E.2d 81, 93 (Ind. Ct. App. 2001) (indicating that when considering criminal history, the trial court can look to felony convictions, misdemeanor convictions and other prior criminal activity which has not been reduced to a conviction but which does indicate a prior criminal history).

[14] To the extent that Maxfield is seeking to have his sentence reduced from the advisory to the minimum allowable sentence of twenty years, we note that the sheer number of Maxfield's sexual encounters with B.C.C. and M.J.B. over the years makes his behavior egregious, therefore supporting not just an advisory sentence, but a maximum sentence. *See Newsome v. State*, 797 N.E.2d 293, 300 (Ind. Ct. App. 2003) (holding that repeated molestations occurring over a period of time can be an aggravating factor supporting the maximum enhancement). Here, instead of sentencing him to the maximum sentence of fifty years, the trial court was lenient in sentencing sixty-one-year-old Maxfield to serve an advisory thirty-year sentence on each Count.

[15] Given the nature of Maxfield's offenses and character, we cannot say that he has demonstrated that the concurrent thirty-year sentence for his two Counts of child molesting, Class A felonies, was inappropriate. Thus, we decline to revise Maxfield's sentence.

# CONCLUSION

[16] Based on the foregoing, we conclude that Maxfield's sentence is appropriate in light of his offenses and character.

[17] Affirmed.

[18] Crone, J. and Altice, J. concur