# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2019, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel Hageman
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gregory Kincaid, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 13, 2019 <br><br> Court of Appeals Case No. 19A-CR-829 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila A. Carlisle, Judge <br> The Honorable Stanley E. Kroh, Magistrate <br><br> Trial Court Cause No. 49G03-1808-F5-26970 |

**Baker, Judge.**

[1] Gregory Kincaid appeals the sentence imposed by the trial court for one count of Level 5 felony domestic battery, arguing that (1) the trial court erred by relying on an improper sentence aggravator; and (2) the sentence should be revised in light of the nature of the offense and Kincaid's character. Finding no error and the sentence not inappropriate, we affirm.

## Facts

[2] In August 2018, Kincaid was dating T.H. T.H. and her two children, a son and a daughter, lived with Kincaid at the time. On August 14, 2018, while the family was spending the evening at home, Kincaid was intoxicated and being "[v]ery rude" towards T.H. Tr. Vol. II p. 85. After dinner, T.H. watched a television show, and then around 11:00 or 11:30 p.m., she went to go relax in the bath.

[3] While in the bath, T.H. heard "very loud music" coming from Kincaid's bedroom. *Id.* at 86. She texted him multiple times asking to turn the music down due to the late hour and because her son had an important I.E.P. Assessment at school the next day. Kincaid did not respond to the messages. Instead, he came "storming in the bathroom . . . in a rage," and yelled and cussed at T.H. as she sat in the bath. *Id.* at 87. Kincaid then proceeded to put his hand around T.H.'s neck, strangled her until she could not breathe, and told her "I'll f*cking kill you." *Id.* At some point while T.H. struggled to get free and stand up, the shower curtain fell and startled Kincaid, after which he released T.H. and fled the house. T.H. called her mother and told her, "[h]e tried to kill

me. Come, please. Call the cops." *Id.* at 89. T.H. also locked the doors to the house so that Kincaid could not get back inside. T.H.'s mother testified that T.H. told her Kincaid had punched her in the face; T.H.'s mother then called 911 and reported the same.

[4] When the responding officer arrived at the house, Kincaid was sitting on the porch and spoke with the officer. The officer observed that Kincaid was intoxicated. He then went inside and spoke with T.H., who was crying and visibly upset, and he "immediately noticed that there had been some kind of damage to her—her throat was obviously not in good condition. . . . it was very obvious that something had happened that night." *Id.* at 143. He described the injuries: "obvious red marks on her neck . . . especially on the sides of the neck." *Id.* at 144. Upon entering the bathroom where the attack occurred, the officer observed that "[i]t [was] in complete disarray." *Id.*

[5] On August 16, 2018, the State charged Kincaid with part I of Count I, Class A misdemeanor domestic battery; part II of Count I, Level 5 felony domestic battery for a prior battery conviction with the same victim; Count II, Level 6 felony strangulation; Count III, Level 6 felony domestic battery committed in the presence of a child; and Count IV, Level 6 felony intimidation. Before trial, the State filed a motion to dismiss Count III, and Count IV was renumbered as Count III.

[6] A jury trial was held February 28, 2019, at the conclusion of which Kincaid was found guilty of Count I and not guilty of Counts II and III. Kincaid pleaded

guilty to the enhancement under part II of Count I, resulting in a conviction of Level 5 felony domestic battery. The trial court sentenced Kincaid to five years, with two years executed in the Department of Correction, three years suspended, and 545 days on probation. Kincaid now appeals.

# Discussion and Decision

## I. Sentence Aggravator

[7] Kincaid first argues that the trial court erred during sentencing by relying on the cumulative impact of Kincaid's behavior on T.H. and her children as a sentence aggravator. Sentencing decisions are within the sound discretion of the trial court and we thus afford great deference to the trial court's judgment. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. The trial court may err in its sentencing process if, among other things, it relies on aggravators not supported by the record or that are improper as a matter of law. *Id.* at 490-91. We will not review the relative weight the trial court gave to any properly found aggravators. *Id.* at 491.

[8] During sentencing, the State read aloud three letters from T.H., her son, and her daughter that described the various ways in which Kincaid's actions had impacted their long-term mental, physical, and emotional health. The trial court then considered these impacts as one of many aggravators in determining Kincaid's sentence. Kincaid argues that these letters fail to demonstrate lasting impacts beyond what is normally associated with the offense of domestic battery, and, therefore, that their contents were an improper aggravator.

[9] "Generally, the impact that a victim or a family experiences as a result of a particular offense is accounted for in the [advisory] sentence. 'In order to validly use victim impact evidence to enhance a[n advisory] sentence, the trial court must explain why the impact in the case at hand exceeds that which is normally associated with the crime.'" *Simmons v. State*, 746 N.E.2d 81, 91 (Ind. Ct. App. 2001) (quoting *Davenport v. State*, 689 N.E.2d 1226, 1233 (Ind. 1997)) (internal citation omitted).

[10] We acknowledge that every victim of domestic abuse suffers long-term impacts on all aspects of their well-being beyond what most of us could imagine. T.H. described herself as "scarred for life" by her abusive relationship with Kincaid, during which she "felt like [she] wasn't living anymore, everyday was a survival." Tr. Vol. II p. 215-16. But what we find particularly noteworthy in this case are the additional impacts suffered by T.H.'s daughter as a result of the physical abuse Kincaid inflicted upon her mother. Her letter detailing these impacts reads, in relevant part, as follows:

> . . . First off, I would like to start by saying, Gregory Kincaid has actually messed me up, whether it's mentally, physically or emotionally. He's messed me up on levels that I didn't think was possible. His physical abuse towards my mom, [T.H.], and his mental abuse towards me and my brother caused me to need therapy. I can't tell you how many nights I was sleepless because of his actions. I would hear him beat on my mom, throw things at her, talk down to her, and I would be too scared to sleep because I knew if it got too bad, I would get up and try to stop it. I missed many days of school due to not sleeping, but it doesn't stop there. I would physically have to get between them just so that he would stop hurting her. This man truly broke me and my

spirit. . . . After dealing with this abuse and living with it for four years, he's caused me to have PTSD. I have to be on two different medications. One so I could sleep because I'd wake up hour after hour because of nightmares. Nightmares about him killing my mom or hurting my younger brother. The other medication also for my PTSD, I needed it because anytime I heard a lot of noise, or someone yelling, I would have a flashback of something he'd done. It would cause me to breakdown and start crying. I would tense up, and I remember being so scared that I would have to see this man again.

. . . [T]here's so many stories I could tell you about what Gregory Kincaid has done, but then this letter would be at least 20 pages long. He made me feel like I was nothing, that I shouldn't even be here. . . . And I guess what bothers me the most is how he would treat my mom and turn around and try to be nice to me and my brother. As I'm writing this letter, I just feel sick to my stomach.

\*\*\*

In conclusion, what I'm trying to explain is that he really is a dangerous person. He feeds off of mentally and physically abusing people. I'm scared that he's going to get out and try to come back for us, and I would feel safe if I knew for sure that he's gone.

*Id.* at 213-15.

[11] The lasting and traumatic impacts suffered by T.H.'s daughter—who was not even the direct victim of the offense at hand—far exceed those typically associated with a domestic battery offense, and certainly far exceed what any

bystander should have to endure. The trial court did not err in considering these impacts to be an aggravator in determining Kincaid's sentence.

## II. Sentence Appropriateness

[12] Kincaid next argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a statutorily authorized sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In conducting this review, "substantial deference" must be given to the trial court's decision, "since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[13] For Level 5 felony domestic battery, Kincaid faced a term of one to six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b). The trial court imposed a sentence of five years, with two years executed in the Department of Correction, three years suspended, and 545 days on probation.

[14] With respect to the nature of the offense, we again reiterate the cumulative impacts Kincaid's actions had not only on T.H. as the victim, but on her children as well. Kincaid also strangled T.H. while she was relaxing in the bath, threatened to kill her, and left visible marks and bruises on T.H.'s neck—all in response to T.H. merely texting him asking to turn his music down.

[15] Further, this was not the first time Kincaid had physically abused T.H., and instead was simply the last straw in an ongoing pattern of domestic violence. The letter from T.H.'s daughter went into detail about multiple other incidents, stating, for example, that "for one month straight, he beat my mom every single night," and that she once jumped in front of T.H. to prevent Kincaid from "tr[ying] to hit my mom with a two-by-four piece of wood." Tr. Vol. II p. 214-15. T.H. stated in her letter that this offense marked the point when she "finally found the strength and courage to have Mr. Kincaid arrested for his actions" after years of enduring his abusive behavior. *Id.* at 216.

[16] With respect to Kincaid's character, we first take note of Kincaid's criminal history, which includes convictions for misdemeanor operating while intoxicated, felony criminal recklessness (for which he was ordered to complete domestic violence counseling), misdemeanor domestic battery, and misdemeanor invasion of privacy. This is certainly not the worst pattern of offenses, but when reviewing sentences under Rule 7(B), "[e]ven a minor criminal history is a poor reflection of a defendant's character." *Moss v. State*, 13 N.E.3d 440, 448 (Ind. Ct. App. 2014). It is noteworthy that Kincaid was on probation for domestic battery on T.H. when he again attacked her in this case. He has also been arrested and charged with domestic battery on multiple occasions, demonstrating an ongoing and persistent tendency to commit violence. *See, e.g.*, *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (holding that we may consider a defendant's history of arrests as a reflection of his character).

Kincaid points to his good work history and emphasizes that he was assessed to be in the low-risk category to reoffend as evidence of his good character. While these are valid considerations, the trial court took them into account by suspending three years of his sentence, with only two years to be served in prison.

We do not find the five-year sentence imposed by the trial court to be inappropriate in light of the nature of the offense and Kincaid's character.

The judgment of the trial court is affirmed.

Kirsch, J., and Crone, J., concur.